UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-234-RJC

| KENNETH BERNARD DAVIS, | ) |
|---|---|
| Petitioner, | ) |
| vs. | ) ORDER |
| HERBERT JACKSON, Administrator, Brown Creek Correctional Institution, | ) |
| Respondent. | ) |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment on Petitioner's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, (Doc. No. 7), and on Petitioner's Motion to Proceed in Forma Pauperis, (Doc. No. 3).

**I.   BACKGROUND**

Petitioner is a prisoner of the State of North Carolina, who, on October 20, 2008, in Mecklenburg County Superior Court, was convicted after trial by jury of possession with intent to sell or deliver cocaine, sale of cocaine, and achieving habitual felon status, and was sentenced to 168-211 months imprisonment, in cases 07 CRS 253724-25, and 08 CRS 8836. On February 16, 2010, in a published opinion, the North Carolina Court of Appeals found no error. State v. Davis, 202 N.C. App. 490, 688 S.E.2d 829 (2010). On December 8, 2011, the North Carolina Supreme Court dismissed Petitioner's notice of appeal to that court, by order witnessed December 12, 2011. State v. Davis, 364 N.C. 613, 719 S.E.2d 623 (2011).

Petitioner was represented at trial by Yolanda M. Trotman and on appeal by Bryan Gates.

1

Petitioner dated a pro se motion for appropriate relief ("MAR") on May 13, 2010, and filed it in Mecklenburg County Superior Court. On July 23, 2010, the MAR Court summarily denied the MAR. On January 26, 2012, Petitioner filed a second MAR in Mecklenburg County Superior Court, which MAR was denied on January 31, 2012. On September 17, 2012, Petitioner filed a third pro se MAR in Mecklenburg County Superior Court, which MAR was summarily denied by order dated September 24, 2012. See (Doc. Nos. 8-22; 8-23).

On February 25, 2013, Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals, seeking review of the first two MAR orders. On March 4, 2013, the state filed a response arguing that the certiorari petition should be dismissed due to unreasonable delay and the failure to include copies of necessary documents. (Doc. No. 8-21). On March 5, 2013, certiorari was dismissed.

Petitioner dated his petition April 4, 2013, and it was stamp-filed in this Court on April 15, 2013. Petitioner alleges the following grounds for relief in the petition: (1) the police used entrapment methods to obtain the conviction; (2) Petitioner was charged and convicted of possession with intent to sell or deliver while acting under color of law; (3) Petitioner was charged and convicted of the sale of cocaine when there was no sale; and (4) Petitioner received ineffective assistance of trial and appellate counsel. Respondent filed the pending summary judgment motion on May 23, 2013. On June 6, 2013, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On June 24, 2013, Petitioner filed his response to the summary judgment motion.

## II. STANDARD OF REVIEW

A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine dispute as to any material

fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

B. Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 n.2 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the

3

United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

### III. DISCUSSION

The Court first considers Petitioner's motion to proceed in forma pauperis. Petitioner's trust fund account statement shows that as of April 10, 2013, Petitioner had a balance of $0.09 in his inmate trust account. (Doc. No. 2 at 1). The filing fee for a habeas petition is $5.00. 28 U.S.C. § 1914(a). The Court grants Petitioner's motion to proceed in forma pauperis, as it is clear that he does not have sufficient funds with which to pay the filing fee.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year of the latest of:

 (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

 (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

 (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

 (D) the date on which the factual predicate of the claim or claims presented

could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). In addition, the one-year limitations period is tolled during pendency of a properly filed state post-conviction proceeding. See 28 U.S.C. § 2244(d)(2).

Petitioner's case became final for purposes of direct appellate review on Monday, March 12, 2012, 90 days after the North Carolina Supreme Court's order denying notice of appeal on December 11, 2011. See Clay v. United States, 537 U.S. 522, 527 (2003) (noting that convictions become final for AEDPA purposes at the expiration of the period during which direct review could have been sought). Petitioner's one-year period of limitation under 28 U.S.C. § 2244(d)(1) then ran from March 12, 2012, for 189 days until he filed his third MAR on September 17, 2012. The one-year limitations period then remained tolled under § 2244(d)(2) until the third MAR was denied by order dated September 24, 2012.[1] Petitioner's one-year period then resumed on September 24, 2012, and fully expired 176 days later on Tuesday, March 19, 2013. Because Petitioner dated his pro se federal habeas application form April 4, 2013, and filed it in this Court on April 15, 2013, it is out-of-time.

In his response to the Government's summary judgment motion, Petitioner contends that

---

[1] Petitioner did not file a petition for writ of certiorari with the North Carolina Court of Appeals seeking review of the denial of his MAR. See (Doc. No. 1 at 4). Because Petitioner did not file a certiorari petition in the North Carolina Court of Appeals seeking review of the denial of his third MAR, his one-year period recommenced upon the September 24, 2012, denial of the MAR. See Thomas v. Outlaw, No. 5:10-HC-2258-FL, 2012 WL 255336, at *2 n.5 (E.D.N.C. Jan. 27, 2012) (unpublished) (no tolling during "gap" where petitioner fails to file certiorari petition in North Carolina Court of Appeals); McConnell v. Beck, 427 F. Supp. 2d 578 (M.D.N.C. 2006) (holding that the § 2254 petition was time-barred where the petitioner failed to file a state-court certiorari petition seeking review of the order denying his first MAR and, given that he filed a second MAR rather than a certiorari petition seeking denial of the first MAR, it was clear he chose not to seek appellate review of the denial of the first MAR); Rhue v. Carroll, No. 5:05-HC-592-BO, Order at 4 (E.D.N.C. Aug. 28, 2006) (Boyle, J.) (concluding that because the petitioner failed to file a certiorari petition from the denial of an MAR, he abandoned his right to do so, and the statutory period ceased tolling on the date the MAR was denied), appeal dismissed, 229 F. App'x 214 (4th Cir.), cert. denied, 522 U.S. 1029 (2007).

5

his petition is timely. Petitioner contends, and he has alleged in his petition, that he filed his third MAR on March 6, 2012. The MAR was stamped-filed, however, on September 17, 2012. See (Doc. No. 8-22 at 2). Unlike § 2254 petitions, state MARs are considered filed when they are actually stamp-filed in the MAR Court, rather than when the petitioner places the MAR in the prison system for mailing. Thus, the so-called "mailbox rule" does not apply to state MARs. See Bryson v. Harkleroad, No. 1:10CV36-3-MU, 2010 WL 1328313, at *3-4 (W.D.N.C. Apr. 1, 2010), appeal dismissed, 405 F. App'x 773 (4th Cir. 2010).

The Court further finds that, even if the petition were timely, it is still subject to dismissal on the merits. As noted, Petitioner alleges the following grounds for relief in the petition: (1) the police used entrapment methods to obtain the conviction; (2) Petitioner was charged and convicted of possession with intent to sell or deliver while acting under color of law; (3) Petitioner was charged and convicted of the sale of cocaine when there was no sale; and (4) Petitioner received ineffective assistance of trial and appellate counsel.

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> Detective D.L. Kellough of the Charlotte Police Department testified as follows: On 14 November 2007, Kellough was attempting to make undercover purchases of crack cocaine in the Reid Avenue area of Charlotte, N.C. Kellough and Officer Kimberly Blackwell, also of the Charlotte Police Department, drove into a convenience store parking lot where Defendant Kenneth Bernard Davis flagged them down. When Kellough stopped the vehicle, Defendant came up to the window and asked what they were looking for. Kellough replied that they wanted a couple of "dimes," meaning two ten-dollar rocks of crack cocaine. Defendant told them he could take them somewhere to get the crack.
> Defendant got into the back of the officers' vehicle and directed them to the 2900 block of Reid Avenue. Kellough gave Defendant a marked twenty-dollar bill to purchase the crack, keeping Defendant's jacket so that Defendant would not run off with the money.
> Defendant left the officers' view and then returned a short time later with an object. He gave the object to Blackwell and got into the back seat of the vehicle to be taken back to the store. Defendant asked Blackwell if she would

break him off "a piece of that" for helping them out. Kellough testified that he knew Defendant was referring to "[t]he crack cocaine that he had just purchased for us."

On the way back to the store, Officer Ryan Buckler, also with the Charlotte Police Department, arrested Defendant. Kellough put the object received from Defendant into a manila envelope to give to Property Control. Kellough testified, over objection, "Based on my training and experience[,] my opinion of that substance [sic] appeared to be crack cocaine."

Blackwell testified that when Defendant got back into the officers' vehicle, Defendant "immediately handed me the crack rock. And then as soon as Kellough saw the crack rock[,] he relayed that we had a good case, the arrest team could come in." Blackwell also testified that Defendant asked if they would "pinch him off a piece for helping out[,]" meaning that "[h]e wanted a small piece off the crack rock that he had handed us." Blackwell identified State's exhibit number three as "the envelope that the crack rock was put in that we purchased." She acknowledged that the crack rock was actually put into a two-inch-by-two-inch manila envelope, which was placed into the larger envelope. She further identified State's exhibit number four as the two-inch-by-two-inch manila envelope and testified, over objection, that the envelope "has a crack rock in it." Over objection, the manila envelope and its contents were admitted into evidence.

Blackwell also identified the property sheet "[f]or the crack rock that Detective Kellough and I purchased[,]" and testified that the item that was turned in with the property sheet was described on the sheet as a "crack cocaine rock" weighing 0.4 grams.

Buckler testified that he got into the backseat of the vehicle driven by Kellough and placed Defendant in handcuffs. Buckler then performed a search of Defendant and discovered a metal pipe with a metal Brillo pad and "what I believed to be an individual crack rock."

Kemika Daniels Alloway, a forensic chemist with the Charlotte Mecklenburg Police Department ("CMPD") Crime Laboratory, was tendered by the State as an expert witness in the field of forensic chemistry. Alloway testified that the substance sold by Defendant to Kellough and Blackwell was analyzed by Tony Aldridge, a chemist with the CMPD who had since retired. Alloway then testified that Deanne Johnson, another forensic analyst with the CMPD, reviewed Aldridge's work and determined that the substance was cocaine. Alloway also testified that, based on her experience and her review of Aldridge's work and test results, she concluded that the substance sold to Kellough and Blackwell was cocaine weighing 0.30 grams. Over objection, Aldridge's lab report stating that the substance at issue was cocaine was entered into evidence.

State v. Davis, 202 N.C. App. 490, 491-92, 688 S.E.2d 829 (2010).

In his first ground for relief, Petitioner contends that the police used entrapment methods to gain his conviction. To support this contention, Petitioner essentially asserts that the police

talked him into helping them obtain the cocaine with the promise of a piece of rock if he did so. Petitioner raised the substance of this ground for relief in his third MAR. The MAR Court summarily denied the MAR because Petitioner did not raise this claim on direct appeal. Thus, Petitioner's first ground for relief is procedurally barred. See N.C. GEN. STAT. §§ 15A-1419(a)(3) and (b) (2007) (claim shall be denied when defendant was in an adequate position to have raised it in a prior appeal but did not do so, absent cause and prejudice or a fundamental miscarriage of justice, i.e., actual innocence).

Petitioner's second ground for relief—that he was charged and convicted of possession with intent to sell or deliver while acting under color of law--is merely a re-phrasing or slight variation of his first ground for relief, and is denied for the same reasons that his first ground for relief is denied.

In his third ground for relief, Petitioner contends that he was charged and convicted of the sale of cocaine when there was no sale. Again, this is merely a slight variation of Petitioner's first ground for relief and is denied for the same reasons that his first and second grounds for relief are denied. Furthermore, the above statement of facts show Petitioner did in fact engage in a sale of cocaine to the undercover police officer. See N.C. GEN. STAT. § 90-95(a)(1) (2011) (sale of cocaine).

In his fourth ground for relief, Petitioner contends that he received ineffective assistance of trial and appellate counsel. Petitioner first contends that trial counsel was ineffective because he filed to object to one expert witness testifying for another. That is, Petitioner complains that at trial chemist Kemika Alloway testified as to the test results of chemist Tony Aldridge. Petitioner cannot show either a professional dereliction or a reasonable probability of a different result, however, absent trial counsel's failure to object to Alloway's testimony about the cocaine

8

test results of Aldridge. This is because, as determined by the North Carolina Court of Appeals, any possible error was harmless beyond a reasonable doubt in light of the other overwhelming evidence that the substance was crack cocaine.

> Defendant asserts, however, that his conviction should be reversed because "[d]rug testing reports are testimonial and forensic analyses are not admissible without the testing analyst's testimony." We need not address this argument because we conclude that, even if Aldridge's laboratory report was erroneously admitted, such error was harmless beyond a reasonable doubt in view of the copious -- indeed, overwhelming -- unchallenged evidence establishing that the substance at issue was crack cocaine.

Davis, 202 N.C. App. at 499, 688 S.E.2d at 835. Thus, no professional dereliction or prejudice has been shown due to trial counsel's failure to object. See also Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010) ("Counsel is not required to engage in the filing of futile motions.") (quoting Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005). In sum, the North Carolina Court of Appeals' adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Petitioner's ineffective assistance of trial counsel claim is without merit.

Next, a review of Petitioner's three MARs shows he did not fairly raise a claim of ineffective assistance of appellate counsel. Therefore, his ineffective assistance of appellate counsel claim is procedurally barred under North Carolina law. See N.C. GEN. STAT. § 15A-1419(a)(1) and (b) (claim shall be denied when defendant failed to raise it in prior MAR but did not do so, absent cause and prejudice or fundamental miscarriage of justice, i.e., "actual innocence"). Alternatively, Petitioner's ineffective assistance of appellate counsel claim is also without merit. Petitioner has shown neither a professional dereliction nor a reasonable probability of a different result due to appellate counsel's selection of issues to raise on appeal. Winnowing down potential arguments to exclude weaker ones denotes effective appellate

9

advocacy. See Jones v. Barnes, 463 U.S. 745, 751-52 (1983). In sum, Petitioner's ineffective assistance of trial counsel claim is without merit, and his ineffective assistance of appellate counsel claim is without merit and procedurally barred.

### IV. CONCLUSION

For the reasons stated herein, the Court will deny Petitioner's § 2254 petition as time-barred. Alternatively, Petitioner's claims also fail on the merits. To this extent, the Court grants Respondent's summary judgment motion.

**IT IS, THEREFORE, ORDERED** that:

(1) Petitioner's Motion to Proceed in Forma Pauperis, (Doc. No. 3), is **GRANTED**.

(2) Respondent's Motion for Summary Judgment, (Doc. No. 7), is **GRANTED**.

(3) Petitioner's § 2254 petition is denied and dismissed. The Clerk is instructed to terminate this case. The Clerk of Court is also instructed to serve a copy of this Order and the petition on Respondent as well as the Attorney General of North Carolina, and note the manner of such service in the record.

(4) It is further ordered that, pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: August 19, 2013

*Robert J. Conrad, Jr.*
Robert J. Conrad, Jr.
United States District Judge